UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

GIRO, INC. AND WARRANTY HOUSE
INTERNATIONAL, INC.,                          10 Civ. 5550 (JGK)

              Plaintiffs,          MEMORANDUM OPINION AND
                                                      ORDER

      - against -

MALAYSIAN AIRLINE SYSTEM BERHAD,

              Defendant.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

    The defendant, Malaysian Airline System Berhad ("MAS"), is
a foreign corporation that entered into an agreement with the
plaintiffs, Giro, Inc. and Warranty House International, Inc.
(collectively "the plaintiffs" or "WHI"). WHI is a wholly owned
subsidiary of Giro. The agreement provided that the plaintiffs
would identify and prepare warranty claims on behalf of MAS, and
that, in return, the plaintiffs would collect a fee of thirty-
five percent of any recovery received by MAS as a result of the
plaintiffs' work. The plaintiffs sued the defendant for breach
of contract, breach of oral contract, fraud, and unjust
enrichment. The defendant has brought a motion to dismiss based
on improper venue pursuant to Rule 12(b)(3) of the Federal Rules
of Civil Procedure, or in the alternative, on the grounds of
forum non conveniens. Alternatively, the defendant also moves
to dismiss the causes of action for oral contract, fraud, and

unjust enrichment for failure to state a claim pursuant to Rule
12(b)(6).

## I.

On a motion to dismiss, the allegations in the complaint
are accepted as true.  See Grandon v. Merrill Lynch & Co., 147
F.3d 184, 188 (2d Cir. 1998); Cohen v. Koenig, 25 F.3d 1168,
1172-73 (2d Cir. 1994).  A court generally may consider
documents referenced in the complaint and documents that are in
the plaintiff's possession or that the plaintiff knew of and
relied on in bringing suit.  See Brass v. Am. Film Tech., Inc.,
987 F.2d 142, 150 (2d Cir. 1993); Cortec Indus., Inc. v. Sum
Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991); VTech Holdings
Ltd. v. Lucent Techs., Inc., 172 F. Supp. 2d 435, 437 (S.D.N.Y.
2001).  In particular, in deciding a motion to dismiss for
improper venue, the "court may examine facts outside the
complaint to determine whether venue is proper.  The court must
draw all reasonable inferences and resolve all factual conflicts
in favor of the plaintiff."  E.P.A. ex rel. McKeown v. Port
Authority, 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001) (quoting 5A
Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure: Civil 2d § 1352 (1990 & Supp. 1999)); Burrell v.
State Farm Fire & Cas. Co., No. 00 Civ. 5733, 2001 WL 797461, at
*3 (S.D.N.Y. July 12, 2001) (stating that in deciding motion for
improper venue "a court may consider facts outside the pleading"

and should view facts viewed in light most favorable to
plaintiff); see also Concesionaria DHM, S.A. v. Int'l Fin.
Corp., 307 F. Supp. 2d 553, 555 (S.D.N.Y. 2004).


                              II.

     The relevant facts, as alleged in the Complaint and in the
affidavits and declarations submitted by the parties in
connection with the current motion, are as follows.

     In 2008, WHI's President, Phil King, solicited business
from MAS in Malaysia. (Zaini Decl. ¶ 3.) On June 20, 2008, WHI
and MAS executed a Warranty Administration Services Agreement
(the "Agreement"), pursuant to which WHI was to perform
"warranty and guaranty administration services" on behalf of
MAS. (Compl. ¶¶ 3-4, 14; Compl. Ex. A (hereinafter
"Agreement")). King executed the Agreement on behalf of WHI at
WHI's offices in Oklahoma. (King Aff. ¶ 3.) Representatives of
MAS signed the agreement in Malaysia. (Zaini Decl. ¶ 3.) The
Agreement provided that WHI would review and identify MAS's
potentially valid warranty claims, process them, and submit them
to the applicable warrantors. (Compl. ¶¶ 5, 14; Agreement at 1-
2, 6.) In return, WHI would receive thirty-five percent (35%)
of all the recoveries MAS received as a result of WHI's work.
(Compl. ¶¶ 5, 14; Agreement at 1.) MAS was required to inform
WHI of all of its communications with applicable warrantors and

                               3

to provide all written communications with applicable warrantors regarding the status of the claims prepared by WHI if WHI requested such information.  (Compl. ¶ 15; Agreement at 1-2.) The Agreement also contained a forum selection clause, providing:

> The parties herein have mutually agreed that said warranty service contract contained herein, where applicable, shall be governed by the laws of the United Kingdom and the parties further agree that venue shall be proper under this agreement in the United Kingdom.

(Agreement at 14.)

Although WHI employees traveled to Malaysia in order to review and identify potential warranty claims, WHI asserts that the preparation of warranty claims was conducted by approximately eight employees and/or independent contractors of WHI located in Rhode Island, Indiana, Arizona, and Oklahoma. (Zaini Decl. ¶ 4; Zaini Reply Decl. ¶ 3, attached as Ex. A to Lari Decl.; King Aff. ¶¶ 4-5.)  WHI identified potentially valid claims against Boeing, totaling $1,750,902, Pratt & Whitney, totaling $24,516,149.59, and Rolls-Royce, totaling $200,038,372.62.  (Compl. ¶¶ 16, 19-20.)  WHI also allegedly discovered that MAS was entitled to warranty/guaranty credits from Pratt & Whitney and Rolls-Royce, totaling $53,986,963. (Compl. ¶ 25.)

Boeing approved and paid to MAS $684,7519.13 of the Boeing claims, and MAS paid WHI thirty-five percent of that amount in compliance with the Agreement. (Compl. ¶¶ 17-18.) WHI submitted a portion of claims to Rolls-Royce and Pratt & Whitney directly as required by the Agreement. (Compl. ¶¶ 17-20.) Before WHI submitted the remaining claims, the Manager of Warranty Contracts at MAS, Aznita Ahmad Zaini, informed WHI that MAS would submit the remaining claims to Rolls-Royce and Pratt & Whitney, but assured WHI that WHI would receive payment for any recovery paid for the claims, and that MAS would keep WHI informed all of relevant communications. (Compl. ¶ 21.) MAS allegedly submitted the remaining claims to the offices of Pratt & Whitney and Rolls-Royce in Malaysia, and directed Pratt & Whitney and Rolls-Royce not to communicate with WHI regarding the claims. (Compl. ¶¶ 22-23; Zaini Decl. ¶ 5; See King Aff. ¶ 12.) MAS alleges that all communications between MAS and Pratt & Whitney and Rolls-Royce occurred in Malaysia. (Zaini Decl. ¶ 5.)

The plaintiffs allege, on information and belief, based in part on WHI's historical recovery rate, that MAS recovered between seventy-five and eighty percent of the claims submitted to Rolls-Royce and Pratt & Whitney, but failed to pay WHI anything for the claims. (Compl. ¶¶ 24, 31.) The plaintiffs also allege that MAS recovered all or a portion of the credits

identified by WHI, but has failed to pay WHI in compliance with
the Agreement.  (Compl. ¶ 26.)

    According to MAS, all relevant documents in MAS's
possession and all MAS employees that could have information
relating to this case, including the two MAS employees
identified in the complaint, are located in Malaysia.  (Zaini
Decl. ¶¶ 7-8.)  In addition, MAS contends that an agent of WHI
who would possess information relevant to this dispute is a
citizen of Malaysia.  (Zaini Reply Decl. ¶ 4.)  MAS also asserts
that it was informed that its claims had been denied by
employees of Pratt & Whitney and Rolls-Royce who were located in
Malaysia.  (Zaini Decl. ¶ 6; Zaini Reply Decl. ¶ 5.)  MAS
submits that the employee from Pratt & Whitney who informed it
that the claims were denied was Ivan Yong, who works in
Malaysia, and that the employee from Rolls-Royce who informed it
that the claims were denied was Christopher Devall, who was in
Malaysia but is now working in Thailand.  (Zaini Reply Decl. ¶¶
6-7.)  MAS further contends that the Rolls-Royce employees who
ultimately decide whether to deny a claim submitted to the
Malaysia office are located in the United Kingdom.  (Zaini Reply
Decl. ¶ 8.)

    The plaintiffs claim that the ultimate decision on claims
submitted to the Rolls-Royce Malaysia office is made by
employees located in the United Kingdom, or Virginia, and that

claims submitted to the Pratt & Whitney Malaysia office are ultimately decided by employees in Pratt & Whitney's Connecticut office.  (King Aff. ¶ 6.)  The plaintiffs submit that approximately fourteen potential witnesses relevant to this dispute are located in the United States, while only four are located outside the United States, and that the only people with relevant information to this dispute residing in Malaysia are MAS employees.  (King Aff. ¶¶ 7-8.)  However, this list is plainly inflated.  It includes only one identified individual, Phil King, the President of the plaintiffs, and ten unidentified "employees and/or independent contractors of WHI." (King Aff. ¶ 7.) The plaintiffs also submit that the potentially discoverable documents located outside of the United States are limited to MAS's internal notes and memoranda, and documents related to the submission of claims to Rolls-Royce if they cannot be located in the Virginia office.  (King Aff. ¶ 10.)

### III.

The defendant moves to dismiss this action for improper venue pursuant to Rule 12(b)(3) based on the forum selection clause in the Agreement.  The plaintiffs bear the burden of showing that venue is proper for each claim against the defendant.  PI, Inc. v. Quality Prod., Inc., 907 F. Supp. 752, 757 (S.D.N.Y. 1995).

The defendant claims that the forum selection clause was mandatory and provided for the United Kingdom as the only proper venue for any action arising from the Agreement.  The plaintiffs respond that the clause is not mandatory, but permissive, and that venue over all claims is proper in this district under 28 U.S.C. § 1391(a)(3) and (c).

The defendant argues that the clause is mandatory based on a standard laid out in the decision of the Tenth Circuit Court of Appeals in Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342 (10th Cir. 1992).  However, this Court must look first to the law determined by the Court of Appeals for the Second Circuit. The clause is not a mandatory forum selection clause for venue under the law and standards explained by the Second Circuit Court of Appeals.

A forum selection clause is presumptively enforceable when it is mandatory, "covers the claims and parties involved in the dispute," and "was communicated to the resisting party."  S.K.I. Beer Corp. v. Baltika Brewery, 612 F.3d 705, 708 (2d Cir. 2010) (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 383-84 (2d Cir. 2007)).  If these three factors are met, the burden is on the resisting party to rebut the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unjust, or that the clause [is] invalid for such reasons as fraud or overreaching."  Phillips, 494 F.3d at 383-84 (citations

8

omitted).   There is no dispute that the forum selection clause in the Agreement covers the claims and parties in this case. Nor do the plaintiffs claim that they were not properly informed of the clause.   Therefore, the issue is whether the clause was mandatory with respect to venue.[1]

A forum selection clause is mandatory when it grants exclusive jurisdiction to a particular forum.   In contrast, a permissive forum selection clause "only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum." Baosteel Am. Inc. v. M/V "Ocean Lord", 257 F. Supp. 2d 687, 689 (S.D.N.Y. 2003); see John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs., Inc., 22 F.3d 51, 52–53 (2d Cir. 1994).   A forum selection clause is mandatory "when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."   S.K.I. Beer Corp., 612 F.3d at 708 (internal quotation marks and citation omitted).   Specific language of exclusion is not necessary to create exclusive jurisdiction.   See Baosteel, 257 F. Supp. 2d at 689.   The words of the clause must be considered in context to determine whether they simply make venue proper in a jurisdiction, or exclude venue in any other jurisdiction.   See City of New York v.

---

[1] The plaintiffs do not contend that the forum selection clause was the product of fraud or overreaching.

Pullman, Inc., 477 F. Supp. 438, 442 n. 11 (S.D.N.Y. 1979)
(Weinfeld, J.).

Clauses using phrases such as "shall be determined" or
"shall be brought" are considered mandatory.  See, e.g., Fed.
Ins. Co. v. M/V Ville De'Aquarius, No. 08 Civ. 8997, 2009 WL
3398266, at *5 (S.D.N.Y. Oct. 20, 2009) (finding a forum
selection clause providing that any dispute "shall be determined
by the English laws and any action against the Carrier shall be
brought before the Court of Admiralty" mandatory, not
permissive); Indemnity Ins. Co. of N. Am. v. M/V Easline
Tianjin, Nos. 07 Civ. 959 & 07 Civ. 6008, 2008 WL 418910, at *3
(S.D.N.Y. Feb. 14, 2008) (finding a forum selection clause
providing that any dispute "shall be determined by the court in
the People's Republic of China" to be mandatory, not
permissive.)

However, the word "shall" does not, by itself, create
exclusive jurisdiction.  The Second Circuit Court of Appeals
held that the following forum selection clause was not
mandatory: "Any dispute arising between the parties hereunder
shall come within the jurisdiction of the competent Greek
Courts, specifically of the Thessaloniki Courts."  John Boutari,
22 F.3d at 52.  As the Court of Appeals explained, "Although the
word 'shall' is a mandatory term, [as used in the clause at
issue,] it mandate[d] nothing more than that the [Greek Courts]

10

have jurisdiction." <u>Id.</u> at 53 (internal quotation marks
omitted.)

The use of the word "shall" in this case does not make the
clause mandatory.  The clause does not state that "venue shall
<u>only</u> be proper in the United Kingdom," that actions arising
under the Agreement "shall be brought in the United Kingdom," or
that such actions "shall be determined in the United Kingdom."
Rather, it provides that "venue shall be proper under this
agreement in the United Kingdom."  This language indicates that
venue for a case arising under the agreement would be proper in
the United Kingdom, but does not require that all cases be
brought in the United Kingdom.  The defendant contends that the
clause cannot be permissive because such a clause would be
meaningless.  This is incorrect.  A clause such as this ensures
that a default jurisdiction exists where a case can be brought
that is presumably convenient to both parties.  Without such a
clause, there would be no assurance that an adverse party could
be sued in a mutually convenient jurisdiction.  Because the
clause does not create exclusive jurisdiction, it is permissive
and the defendant's motion to dismiss pursuant to Rule 12(b)(3)
must be **denied**.  <u>See, e.g.</u>, <u>John Boutari</u>, 22 F.3d at 52-53
(collecting cases); <u>Computer Express Int'l, Ltd. & Digital Data</u>
<u>Devices, Inc. v. Micronpc, LLC</u>, No 01 Civ. 4801, 2001 WL
1776162, at *5-*6 (E.D.N.Y. Dec. 21, 2001).

IV.

The defendant also moves to dismiss the complaint for <u>forum non conveniens</u>.  The defendant contends that the plaintiffs should have brought their action in Malaysia or the United Kingdom.  "[T]he doctrine of <u>forum non conveniens</u> contemplates the dismissal of lawsuits brought by plaintiffs in their favored forum in favor of adjudication in a foreign court." <u>Wiwa v. Royal Dutch Petroleum Co.</u>, 226 F.3d 88, 101 (2d Cir. 2000).  The Court of Appeals for the Second Circuit has established a three-step framework for resolving a motion to dismiss based on <u>forum non conveniens</u> that requires: (1) determining the degree of deference to be afforded to the plaintiff's choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947). <u>See Iragorri v. United Tech. Corp.</u>, 274 F.3d 65 73-74 (2d Cir. 2001) (en banc), <u>see generally</u> <u>Base Metal Trading, S.A. v. Russian Aluminum</u>, 253 F. Supp. 2d 681, 693-713 (S.D.N.Y. 2003) (applying framework); <u>see also</u> <u>Calvam Bus. Ltd. v. Certain Underwriters at Lloyd's, London</u>, No. 08 Civ. 2225, 2009 WL 667272, *2 (S.D.N.Y. Mar. 16, 2009).  The Court applies each part of the framework in turn.

12

**A.**

As an initial matter, the Court must determine the degree of deference that should be afforded to the plaintiff's choice of forum.  See Iragorri, 274 F.3d at 70-73; accord Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukr., 311 F.3d 488, 498 (2d Cir. 2002); Base Metal Trading, 253 F. Supp. 2d at 693.  The Supreme Court in Gulf Oil generally instructed that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  Gulf Oil, 330 U.S. at 508.  The Second Circuit Court of Appeals has interpreted Gulf Oil to mean that "a court reviewing a motion to dismiss for forum non conveniens should begin with the assumption that the plaintiff's choice of forum will stand unless the defendant meets the burden of demonstrating" the factors discussed below. Iragorri, 274 F.3d at 71.

As the Court of Appeals explained in Iragorri, the degree of deference varies depending on the circumstances.  While plaintiffs who file suit in the district in which they reside are entitled to great deference, less deference is owed to foreign citizens suing in the United States.  Id. at 71.  To determine what deference should be afforded to a United States resident suing in a district other than that in which the United

13

States resident resides, the Court of Appeals has applied a more general sliding scale.  Id. at 71-72.  The Court of Appeals has instructed that the "more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes as valid, the greater the deference that will be given to the plaintiff's forum choice."  Id. at 71-72.  The key to the analysis is distinguishing between a plaintiff's legitimate right to select a forum and mere forum-shopping that is designed to burden the defendants or to give the plaintiff a tactical advantage.  See id. at 72-73. Therefore,

> the greater the plaintiff's or the lawsuit's bona fide
> connection to the United States and to the forum of
> choice and the more it appears that considerations of
> convenience favor the conduct of the lawsuit in the
> United States, the more difficult it will be for the
> defendant to gain dismissal for forum non conveniens.
> . . . On the other hand, the more it appears that the
> plaintiff's choice of a U.S. forum was motivated by
> forum-shopping reasons . . . the less deference the
> plaintiff's choice commands . . . .

Id. at 72 (footnotes omitted); see also F.D. Import & Export Corp. v. M/V Reefer Sun, No. 02 Civ. 2936, 2003 WL 21396658, at *3 (S.D.N.Y. June 17, 2003) ("In sum, courts should give greater deference to the plaintiff's chosen forum when the choice is based on legitimate factors . . . and give less deference when the plaintiff is seeking a tactical advantage that may result from peculiar conditions . . . ."); see also Calvam Business Ltd., 2009 WL 667272 at *2-*3.

14

Applying the sliding scale approach established by
Iragorri, the plaintiffs are entitled to little deference in
this case.  The plaintiffs state that under Guidi v. Inter-
Cont'l Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000), the "home
forum" for an American citizen is any United States court.  The
plaintiffs then argue that the Court should defer to the
plaintiff's choice of a United States forum compared to a
foreign forum unless the balance of factors is strongly in favor
of a foreign forum.  However, this analysis ignores the more
nuanced three step approach that the Court of Appeals directed
in Iragorri should be applied to a case where a United States
resident chooses to sue in a district in which the United States
resident does not reside.  Iragorri specifically instructs that
a court should look not only to the lawsuit's bona fide
connection to the United States, but also to the "forum of
choice." Iragorri, 274 F.3d at 72.  The Court of Appeals
rejected an arbitrary rule whereby a United States resident's
choice of forum was entitled to no deference simply because the
United States resident did not sue in the resident's home
district.  The Court explained that a United States resident
might choose to sue in a district other than the resident's home
district in order to perfect jurisdiction over the defendant.
"In many circumstances, it will be far more convenient for a
U.S. resident to sue in a U.S. court than in a foreign country,

even though it is not the district in which the plaintiff resides." Id. at 73.  Nevertheless, the Court "must consider a plaintiff's likely motivations in light of all the relevant indications," giving "greater deference to a plaintiff's forum choice to the extent it was motivated by legitimate reasons, . . . and diminishing deference to a plaintiff's forum choice to the extent it was motivated by tactical advantage." Id.

Moreover, Guidi itself concerned the deference to be given to the choice of a United States forum by two United States widows who were suing a corporation and other individuals.  The Court of Appeals distinguished that case from a lawsuit "where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts." Guidi, 224 F.3d at 147; see also Online Payment Solutions Inc. v. Svenska Handelsbanken AB, 638 F. Supp. 2d 375, 382 (S.D.N.Y. 2009) (finding that where the plaintiff chose to establish and operate his corporation in Sweden and England, he should "not be surprised that he would need to litigate the corporation's claims in those jurisdictions"); Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG (Erste Bank), 535 F. Supp. 2d 403, 408 (S.D.N.Y. 2008) (finding that the plaintiff's choice of forum was not entitled to substantial deference where the plaintiff is a corporation, not an individual, and where the relevant agreement was executed in a foreign country with

16

knowledge of how that country's business environment and law
works).

In this case, the plaintiffs are Oklahoma corporations that
entered into an agreement with the defendant, a Malaysian
corporation.  The plaintiffs solicited business from MAS in
Malaysia, and did substantial work pursuant to the Agreement in
Malaysia.  (Zaini Reply Decl. ¶¶ 2-4; King Aff. ¶ 4.)  The
plaintiffs also agreed that the United Kingdom would have
jurisdiction over any disputes arising from the Agreement, and
that the Agreement would be governed by United Kingdom law.
Thus, there is no question that the plaintiffs had an
expectation of possibly litigating disputes arising from the
Agreement abroad.

In addition, the lack of any connection between the
plaintiffs and this district supports the proposition that, at
the first step of the Iragorri analysis, the plaintiffs' choice
of forum was based on impermissible forum shopping factors and
not on permissible factors relating to convenience.  See Cortec
Corp., 535 F. Supp. 2d at 407-408, 412-413 (considering
connections to New York in evaluating a suit brought by a United
States corporation located in Minnesota against foreign
corporations).  The plaintiffs argue that they did have a
legitimate reason for bringing this lawsuit in New York, at a
considerable distance from the district where they are located,

17

namely, that the defendant could be sued here.  This is a permissible consideration under _Iragorri_.  _Iragorri_, 274 F.3d at 73.  However, the force of this consideration is somewhat diminished because the plaintiffs have made no representations that MAS could not have been sued in Oklahoma under the Oklahoma long-arm statute or by other means.

No events in connection with the underlying transaction occurred in this district, and there are no arguments that any witnesses or documents are located here.  Nor are the plaintiffs themselves incorporated in New York.  If this case were tried in this district, all of the witnesses would be beyond the subpoena power of the Court.

Moreover, there is an additional consideration in this case which supports the proposition that impermissible tactical considerations entered into the choice of this district.  If this case were brought in the plaintiffs' home forum in Oklahoma, the court would be required to follow the law in the Tenth Circuit and likely find the forum selection clause mandatory and dismiss the case on that ground.  _See_ _Milk 'N' More, Inc._, 963 F.2d at 1343, 1345-46 (finding that a forum selection clause stating "that venue shall be proper under this agreement in Johnson County, Kansas" was mandatory and binding on the parties to the agreement.)

Because the plaintiffs are corporations that were on notice of possible litigation in foreign courts and there is reason to believe the plaintiffs' decision to file this action in New York was motivated, at least in part, by forum shopping rather than convenience, the plaintiffs' choice of forum is entitled to little deference.

### B.

The second step in the Iragorri framework requires the defendant to identify an adequate alternative forum where the defendant is amenable to process.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n. 22 (1981); Base Metal Trading, 253 F. Supp. 2d at 698.  The defendant has offered the United Kingdom and Malaysia as alternative fora.  The plaintiffs offer no reason to doubt that this case could be brought in either of these alternative jurisdictions.

### C.

Having determined that the plaintiffs' choice of forum is entitled to little deference, and having found the United Kingdom or Malaysia to be adequate alternative fora, the Court now weighs the private and public interest factors set forth by the Supreme Court in Gulf Oil.  The private factors to be considered in this case are: (1) the relative ease of access to sources of proof; (2) the convenience of wiling witnesses; (3) the availability of compulsory process for attaining the

attendance of unwilling witnesses; and (4) the other practical
problems that make trial easy, expeditious, and inexpensive.
See Gulf Oil, 330 U.S. at 508; accord Aguinda v. Texaco, Inc.,
303 F.3d 470, 479 (2d Cir. 2002).  "In applying these factors,
the court should focus on the precise issues that are likely to
be actually tried, taking into consideration the convenience of
the parties and the availability of witnesses and the evidence
needed for the trial of these issues." Monegasque, 311 F.3d at
500 (internal quotation marks omitted).  In this case, the
private factors weigh strongly in favor of dismissal.

        The plaintiffs cannot reasonably claim that the action
should be brought in the United States, or more specifically New
York, for the convenience of the parties and the witnesses.  It
is plain that the events truly at issue in this case occurred in
Malaysia, and most of the witnesses with knowledge of those
events are located in Malaysia, or possibly England and
Thailand.  The gist of the lawsuit is that employees of the
defendant were responsible for breaching the Agreement with the
plaintiffs by contacting representatives of Pratt & Whitney and
Rolls-Royce in Malaysia and telling them not to communicate with
the plaintiffs, and by failing to pay money to the plaintiffs
that the plaintiffs allege the defendant received for claims
prepared by the plaintiffs.  The defendant is alleged to have
breached the contract by actions it took in Malaysia.  The

plaintiffs do not enhance their case by conjuring up ten alleged
employees of the plaintiffs or independent contractors without
any identification or explanation of how their testimony could
be significant in this case.  See Crosstown Songs U.K. Ltd. v.
Spirit Music Grp., Inc., 513 F. Supp. 2d 13, 17 (S.D.N.Y. 2007);
Gilstrap v. Radianz Ltd., 443 F. Supp. 2d 474, 487-88 (S.D.N.Y.
2006).  Moreover, the internal deliberations of Pratt & Whitney
and Rolls-Royce are not directly at issue.  The central issues
in this case are what MAS did in Malaysia and whether MAS was
paid for claims that it submitted.  Thus, the ease of access to
evidence and the convenience to the parties and witnesses weigh
against adjudication in the United States, and, particularly, in
New York.

The lack of availability of compulsory process with respect
to potential witnesses also supports dismissal.  There are no
identified witnesses within the subpoena power of this Court.
Moreover, given the nature of the allegations, the great bulk of
the witnesses would be located in Malaysia.  Although the
plaintiffs are United States corporations, compulsory process
would not pose an issue to this case being litigated abroad
because they could bring suit in the United Kingdom or Malaysia,
and the great majority of witnesses whom they allege have
relevant testimony are employed by or affiliated with the
plaintiffs.  (See King Aff. ¶ 7.)

21

Neither party has addressed the fiscal or practical difficulties of bringing potential witnesses and documents to the United States, and more specifically to New York. However, given the circumstances, the trial would be easier, more expeditious, and less expensive if it were held in Malaysia or the United Kingdom, rather than in New York. The defendant is located in Malaysia. The witnesses likely to have direct knowledge of whether the Agreement was breached and, if so, what damages are owed, are located primarily in Malaysia. Holding the trial in New York would require representatives of the defendant to travel from Malaysia to New York, and it would also require the plaintiffs to travel from Oklahoma to New York. There is nothing connecting the plaintiffs or this lawsuit to New York. Consequently, on balance the private interest factors counsel in favor of the dismissal of the case for forum non conveniens.

Similarly, an assessment of the public interest factors also counsels in favor of dismissal for forum non conveniens. The public factors are: (1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home. See Gulf Oil, 330 U.S. at 509; Aguinda, 303 F.3d at 480.

Court congestion is not a significant factor.  Although this Court could reasonably hear the case, there is no indication that courts in the United Kingdom or Malaysia would provide a less expeditious forum than this Court.

The prospect of applying foreign law weighs slightly in favor of dismissal.  English law is more likely to be applied in this case than New York law, because the forum selection clause in the Agreement states "the parties herein have mutually agreed that said warranty services contract . . . shall be governed by the laws of the United Kingdom," and this is principally a breach of contract case.  The mere likelihood that foreign law will apply weighs in favor of dismissing the case for forum non conveniens.  See Ioannides v. Marika Mar. Corp., 928 F. Supp. 374, 379 (S.D.N.Y. 1996) ("While the Court need not definitively resolve the choice of law issue at this point, the likelihood that foreign law will apply weighs against retention of the action.")  However, the likelihood that foreign law will apply tips the balance toward the United Kingdom or Malaysia only slightly, because English law is particularly amenable to application in United States courts.  See Gross v. British Broadcasting Corp., 386 F.3d 224, 233-34 (2d Cir. 2004); see also Calvam Business Ltd., 2009 WL 667272 at *8.

Because there has been no jury demand in this case thus far, the third factor is irrelevant.  However, if any of the

23

parties sought a jury, the third factor would weigh in favor of
dismissal.  It would be unfair to impose jury duty on New York
residents in this case, because this action has no connection to
New York whatsoever.  If the case were tried in New York,
residents of this district would be called upon to find facts
pertaining to a case that has no relation to their community.

The fourth and final factor weights in favor of dismissal.
The United Kingdom or Malaysia has an interest in having this
dispute decided in their courts.  Although the parties of this
case are not residents or citizens of the United Kingdom, the
Agreement is governed by English law, and the primary issue is
breach of contract.  The defendant is incorporated in Malaysia,
and the alleged breach of contract occurred in Malaysia, and
thus Malaysian courts have an interest in adjudicating the
dispute.  Although the plaintiffs are incorporated in the United
States, they have virtually no contacts with New York, and they
voluntarily agreed that venue would be proper in the United
Kingdom.  Consequently, the public factors weigh in favor of
dismissal for forum non conveniens.

In sum, courts in the United Kingdom or Malaysia are more
appropriate and convenient fora for adjudicating this
controversy.  The parties and the lawsuit itself are not
connected to New York in any material way.  Malaysia is where
the defendant is located, and the parties chose to apply English

24

law to the Agreement, and agreed to suit in the United Kingdom.
The suit arises out of conduct that occurred in Malaysia.
Moreover, the case will likely require the application of
English law, and documents and witnesses from Malaysia.  For the
reasons explained above, the plaintiffs' choice of forum is
entitled to little deference; courts of the United Kingdom or
Malaysia constitute adequate and available alternative fora; and
both the private and public factors identified by the Supreme
Court in Gulf Oil weigh in favor of dismissal.

Because this action should be dismissed for forum non
conveniens, it is not necessary to reach the additional grounds
advanced in support of dismissal.

### CONCLUSION

The Court has carefully considered all of the parties'
arguments.  To the extent that they are not dealt with above,
they are either moot or without merit.  For the foregoing
reasons, the defendant's motion to dismiss is **granted** for forum
non conveniens.  The clerk is directed to enter judgment
dismissing this case without prejudice and closing all pending
motions.

SO ORDERED.

Dated:    New York, New York
          June  2  , 2011

                                    John G. Koeltl
                                United States District Judge

25